IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| SPRINT/UNITED MANAGEMENT CO., ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | No. 04-2476-KHV |
| RWT TOURS, INC., et al., ) | |
| ) | |
| Defendants. ) | |
| _____) | |

## MEMORANDUM AND ORDER

Sprint/United Management Company brings suit against RWT Tours, Inc. ("RWT"), William D. Howell and Destination San Antonio, Inc. ("DSA") alleging breach of contract, breach of express warranties, negligence, fraud, negligent misrepresentation and quantum meruit. Plaintiff seeks damages and attorneys' fees for the prosecution of this action. Plaintiff also asserts that Howell is personally liable for the acts of RWT and DSA under an alter ego theory. This matter comes before the Court on Defendants RWT Tours, Inc. And William D. Howell' [sic] Motion To Dismiss (Doc. #6) filed November 19, 2004 and Defendant RWT Tours, Inc., William D. Howell, And Destination San Antonio, Inc.'s Motion To Dismiss (Doc. #22) filed March 4, 2005. For reasons set forth below, the Court finds that defendants' first motion should be overruled as moot and defendants' second motion should be overruled.

### Legal Standards

Both motions to dismiss argue lack of personal jurisdiction. The standard which governs a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), Fed. R. Civ. P., is well-established.

Plaintiff bears the burden of establishing personal jurisdiction over defendant. Before trial, however, when a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials, plaintiff need only make a prima facie showing. The allegations in the complaint must be taken as true to the extent they are uncontroverted by defendants' affidavits. If the parties present conflicting affidavits, all factual disputes are resolved in plaintiff's favor, and plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party. Behagen v. Amateur Basketball Ass'n, 744 F.2d 731, 733 (10th Cir. 1984), cert. denied, 471 U.S. 1010 (1985); see also Williams v. Bowman Livestock Equip. Co., 927 F.2d 1128, 1130-31 (10th Cir. 1991); Rambo v. Am. S. Ins. Co., 839 F.2d 1415, 1417 (10th Cir. 1988). The procedure to decide a motion to dismiss for improper venue is generally the same as for deciding a motion to dismiss for lack of personal jurisdiction. See Elec. Realty Assocs. v. Paramount Pictures Corp., 935 F. Supp. 1172, 1175 (D. Kan. 1996) (citing M.K.C. Equip. Co., Inc. v. M.A.I.L. Code, Inc., 843 F. Supp. 679, 682 (D. Kan. 1994)).

**Factual Background**

Plaintiff's first amended complaint alleges the following facts:

RWT Tours, Inc. ("RWT") is a Texas corporation. Destination San Antonio, Inc., also a Texas corporation, is a wholly owned subsidiary of RWT. William D. Howell works as a director and officer of RWT and DSA. In a Ticket Purchase Agreement ("agreement") dated September 8, 2003, RWT agreed to provide Sprint 60 tickets for the 2004 NCAA men's basketball Final Four championship. Howell negotiated the agreement and signed on behalf of RWT. Employees from DSA maintained daily contact with Sprint on the agreement. The terms of the agreement were as follows:

This purchase agreement is for the sale, by the Seller, of sixty (60) individual 2004 NCAA

Men's Basketball Final Four Championship ticket packages to the Buyer for a mutually agreed price of Two thousand dollars ($2,000.00) per ticket package. The 2004 Men's Basketball Final Four Championships is scheduled to take place April 3-5, 2004 at the Alamodome in San Antonio, Texas.

The above purchase price is the basic cost of the package. A 20% service charge ($400.00) will be added to the basic package price by RWT Tours on the final invoice. Additionally, the basic ticket package and service charge are subject to sales tax (currently 7.875%).

. . . .

**Seating Location**: The selected tickets are considered Lower Level Court Area seating. Although these are individual ticket packages, all 60 are located within Section 102. All sixty (60) are located between rows 10 and 17 with the minimum grouping being six (6) seats on a row. The exact seating breakdown will be available upon issuance of final printed tickets from the NCAA on or before 21 February 2004. The tickets for the pre-game parties/activities are not for specific seating.

**Payment Terms**: An initial deposit of $60,000.00 (50%) shall be due and payable upon execution of the Agreement.

An additional deposit of $30,000.00 (25%) shall be due and payable no later than 7 October 2003.

A final deposit of $30,000.00 (25%) shall be due and payable no later than 7 January 2004. Additionally, the service charge ($24,000.00) and the sales tax ($11,340.00) are due on this date.

. . . .

**Warranty**: Seller warrants to Buyer it has good and marketable title and possession of said ticket packages, full authority to sell and transfer said ticket packages, and that said ticket packages are sold free of all liens, encumbrances, liabilities, and adverse claims of every nature and description whatsoever.

. . . .

**Cancellations**: Except as otherwise provided for in this Agreement, if Seller cancels this Agreement, Seller will refund all amounts received from the Buyer within 30 business days of the cancellation notice.

. . . .

**Attorney's Fees**: If either party brings legal action to enforce any terms of this

> Agreement, the prevailing party shall be entitled to collect, in addition to all damages, its cost of legal remedy, including reasonable attorney's fees.

Exh. 1 to First Amended Complaint (Doc. #16) filed February 22, 2005.

Defendants hired CS Marketing to assist with performance under the agreement. Sprint paid $155,340 to satisfy its obligations under the agreement. Defendants did not provide the tickets as agreed. On March 8, 2004, Jim Mason from DSA reported in an e-mail to Sprint that DSA/RWT had the tickets and would provide them to Sprint. On March 11, 2004, Sprint met with Howell in San Antonio, Texas. Howell stated that he had the tickets and showed Sprint a document that purported to show the ticket locations.

On the Tuesday before the 2004 Final Four was to begin, Howell explained to Sprint that he did not have the tickets and could not deliver them. Howell stated that he had 10 tickets but that they did not comport with the terms of the agreement. Howell explained that he could not provide the tickets due to improper control procedures, improper supervision of an agent of defendants, and improper selection, supervision and oversight of CS Marketing. Despite representations and promises to the contrary, defendants never had the tickets. Sprint demanded a full refund and purchased 50 tickets to the 2004 NCAA Final Four on the open market for $248,400.00.

On Friday, April 2, 2004, Sprint received 10 tickets from defendants. Later in 2004, Howell and other representatives of RWT/DSA traveled to Overland Park, Kansas, to attempt to resolve the failure to deliver the tickets. The parties did not reach resolution.

Defendants assert that the Court must dismiss plaintiff's claims for lack of personal jurisdiction and improper venue. See Fed. R. Civ. P. 12(b)(2); 28 U.S.C. § 1391. Specifically, defendants assert that

the Court lacks personal jurisdiction because defendants do not have the required minimum contacts with the State of Kansas. Defendants assert that venue is improper because the events or omissions which give rise to the claims did not occur in Kansas.

## Analysis

On November 19, 2004, Howell and RWT Tours, Inc. filed a motion to dismiss. On February 22, 2005, plaintiff amended its complaint and added DSA as a defendant. See First Amended Complaint (Doc. #16-1). On March 4, 2005, all defendants filed a second motion to dismiss. Because the second motion addresses the precise issues raised in the first motion, the Court overrules as moot Defendants RWT Tours, Inc. And William D. Howell' [sic] Motion To Dismiss (Doc. #6) filed November 19, 2004.

I.  **Personal Jurisdiction – Rule 12(b)(2)**

Defendants assert that this Court must dismiss plaintiff's claims for lack of personal jurisdiction. See Fed. R. Civ. P. 12(b)(2). Specifically, defendants argue that the Kansas long-arm statute does not confer personal jurisdiction over defendants and that constitutional due process requirements cannot be met.

The Court has discretion to consider a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), Fed. R. Civ. P., based on affidavits and other written material. See Behagen, 744 F.2d at 733. If the Court so chooses, plaintiff must make only a prima facie showing of jurisdiction to avoid dismissal. See Wenz v. Memery Crystal, 55 F.3d 1503, 1505 (10th Cir. 1995). Of course plaintiff eventually must establish jurisdiction by a preponderance of the evidence, either at a pretrial evidentiary hearing or at trial. Until such a hearing is held, a prima facie showing suffices, notwithstanding any contrary

presentation by the moving party. See Kuenzle v. HTM Sport-Und Freizeitgerate AG, 102 F.3d 453, 456 (10th Cir. 1996). If defendants challenge the jurisdictional allegations, plaintiff must support the jurisdictional allegations in a complaint by competent proof of the supporting facts. Pytlik v. Prof'l Res., Ltd., 887 F.2d 1371, 1376 (10th Cir. 1989). All factual disputes, however, are resolved in plaintiff's favor. See id. Further, the allegations in the complaint must be taken as true to the extent that they are uncontroverted by defendants' affidavits. Intercon, Inc. v. Bell Atl. Internet Solutions, Inc., 205 F.3d 1244, 1247 (10th Cir. 2000) (only well-pled facts, as distinguished from conclusory allegations, accepted as true).

The Court applies a two-part test to analyze Rule 12(b)(2) motions to dismiss for lack of personal jurisdiction over a nonresident defendant. First, defendants' conduct must fall within a provision of the Kansas long-arm statute, K.S.A. § 60-308. Kansas courts construe the long-arm statute liberally to assert personal jurisdiction over nonresident defendants to the full extent permitted by the limitations of due process. Volt Delta Res. Inc. v. Devine, 241 Kan. 775, 777, 740 P.2d 1089, 1092 (1987). Second, defendants must have sufficient minimum contacts with Kansas to satisfy the constitutional guarantee of due process. See Equifax Servs., Inc. v. Hitz, 905 F.2d 1355, 1357 (10th Cir. 1990); see also World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291 (1980) (court may exercise personal jurisdiction over nonresident defendant only so long as "minimum contacts" exist between defendant and forum state).

A.  The Kansas Long-Arm Statute

Defendants asserts that this Court has no authority to exercise personal jurisdiction over the defendants under the Kansas long-arm statute. K.S.A. § 60-308(b) provides as follows:

**Submitting to jurisdiction – process**. Any person, whether or not a citizen or resident

> of this state, who in person or through an agent or instrumentality does any of the acts hereinafter enumerated, thereby submits the person and, if an individual, the individual's personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of these acts:
> (1) Transaction of any business within this state;
> (2) commission of a tortious act within this state;
> (3) ownership, use or possession of any real estate situated in this state;
> (4) contracting to insure any person, property or risk located within this state at the time of contracting;
> (5) entering into an express or implied contract, by mail or otherwise, with a resident of this state to be performed in whole or in part by either party in this state . . .

Plaintiff asserts that personal jurisdiction against defendants is proper under the following subsections of the Kansas long-arm statute: (1) "transaction of any business within the state," (2) "commission of a tortious act within this state," and (5) "entering into an express or implied contract, by mail or otherwise, with a resident of this state to be performed in whole or in part by either party in this state." Defendants offer no specific argument whether the Kansas long-arm statute confers jurisdiction. Instead, defendants focus their arguments on due process requirements and assert that their contacts are not sufficient to subject them to personal jurisdiction in Kansas and that no performance occurred in Kansas.

An injury which occurs in Kansas as a result of a tortious act outside the state amounts to a tortious act within the state under K.S.A. 60-308(b)(2). Thermal Components Co. v. Griffith, 98 F. Supp.2d 1224, 1227-28 (D. Kan. 2000) (citing Taylor v. Phelan, 912 F.2d 429, 431 (10th Cir. 1990)). If the injury attributable to the tortious activity is felt by a Kansas complainant, Section 60-308(b)(2) does not require the nonresident defendant's physical presence within the forum state. Thermal Components Co., 98 F. Supp.2d at 1227-28; see also Ling v. Jan's Liquors, 237 Kan. 629, 633, 703 P.2d 731 (1985) (even if defendant never did business in Kansas, tort deemed to have occurred there where defendant's

conduct allegedly caused injury in Kansas); Wegerer v. First Commodity Corp., 744 F.2d 719 (10th Cir. 1984). Allegations of misrepresentation, concealment, or refusal to disclose material facts may be sufficient to set forth prima facie case of jurisdiction over out-of-state defendants. See Thies v. Lifeminders, Inc., No. CIV.A. 02-2119-KHV, 2002 WL 31571258, at *14 (D. Kan. Nov. 6, 2002); see also Ammon v. Kaplow, 468 F. Supp. 1304, 1309 (D. Kan. 1979) (allegedly false advertisement in national publication, causing financial injury to Kansas resident, satisfies tortious act provision of Section 60-308(b)(2)); Dazey Corp. v. Wolfman, 948 F. Supp. 969, 973 (D. Kan. 1996) (fraudulent conduct which caused financial loss in Kansas satisfied tortious act provision of Section 60-308(b)(2)). A single telephone call made by an out-of-state defendant has been held to constitute a tortious act within the state under the Kansas long-arm statute. See J.E.M. Corp. v. McClellan, 462 F. Supp. 1246, 1247 (D. Kan. 1978) (defendant fraudulently misrepresented value of jade to induce plaintiff to enter into contract).

Plaintiff first argues that defendants committed torts in Kansas. Specifically, plaintiff argues that defendants made phone calls, sent a fax and sent e-mail to Kansas which contained false statements. Plaintiff provides affidavits which support its allegations, including an e-mail from an employee of DSA dated March 8, 2004, which stated that DSA had the tickets. See Exh. 1B to Memorandum Of Sprint/United Management Co. In Response To Defendants Motion To Dismiss (Doc. #8) filed December 9, 2004. The Court finds that plaintiff has established a prima facie case of personal jurisdiction under K.S.A. § 60-308(b)(2).

Next, plaintiff argues that defendants transact business in Kansas. Plaintiff asserts that defendants had at least 50 contacts with Sprint in Kansas; Howell's silent partner in RWT is a resident of Kansas; and an e-mail footer advertises that the defendants transact business in Kansas City. Plaintiff further contends

that Howell has initiated contacts with Sprint since 1997 to solicit business. Defendants argue that they never transacted business in Kansas. Defendants have not disputed that Howell and other DSA employees initiated contacts with Sprint through telephone calls to Sprint in Kansas in order to solicit Sprint business. Negotiations took place via telephone and e-mail. The Court finds that these contacts constitute doing business in Kansas. See J.E.M. Corp., 462 F. Supp. at 1247.

Finally, plaintiff argues that it performed its obligations under the contract from Kansas and thus long-arm jurisdiction is proper under K.S.A. § 60-308(b)(5). Plaintiff points out that payment for the tickets was made in Kansas and negotiations by Sprint employees occurred in Kansas. Defendants argue that payments were made in San Antonio, yet their invoices reflect that they sent the invoices to Kansas for payment. To the extent that plaintiff and defendants' affidavits conflict, the Court resolves the factual disputes in favor of plaintiff, and finds that plaintiff has set forth a prima facie case of personal jurisdiction under the Kansas long-arm statute.

B.   Due Process

The second aspect of the test is whether this Court's exercise of jurisdiction satisfies constitutional due process requirements. See Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). Due process requires "minimum contacts" between the nonresident defendant and the forum state. Id. This standard may be satisfied in one of two ways. First, specific jurisdiction exists over a matter in the forum state if defendant "purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." Trierweiler v. Croxton & Trench Holding Corp., 90 F.3d 1523, 1532 (10th Cir. 1996) (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)). Second, general jurisdiction exists if "defendant's contacts with the forum state are so 'continuous and systematic'

that the state may exercise personal jurisdiction over the defendant, even if the suit is unrelated to the defendant's contacts with the state." Trierweiler, 90 F.3d at 1533 (quoting Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 415-16 & n. 9 (1984)). In either case, defendant must reasonably be able to anticipate being haled into court in the forum state. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985). Also, jurisdiction in the particular case must be reasonable so as not to offend traditional notions of fair play and substantial justice. See World-Wide Volkswagen, 444 U.S. at 292.

Defendants contend that even if their conduct falls within the reach of the Kansas long-arm statute, the exercise of personal jurisdiction by this Court cannot satisfy due process. Defendants argue that all defendants reside in Texas, no services have been performed in Kansas, defendants have never advertised in Kansas, no part of the agreement was executable in Kansas, no transactions have been performed in Kansas, and none of the negotiations took place in Kansas. Defendants further argue that its e-mail footers which list Kansas City as a place where DMC does business have no relationship to defendants because DMC is a totally separate entity. Defendants also insert a policy argument that Texas courts are better situated to apply Texas law as stated in the agreement.

Plaintiff asserts that the Court can maintain both general and specific jurisdiction over defendants. Plaintiff specifically argues that defendants contacted Sprint and sought business from it, and that the parties negotiated the agreement, in both Kansas and Texas. Defendants communicated numerous times with Sprint in Kansas and sent an e-mail which fraudulently stated that they had possession of the tickets. Additionally, plaintiff states that the contacts were continuous and systematic from 1997 to 2004.

Kansas may assert specific jurisdiction over out-of-state defendants if they "purposefully directed . . . activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate

-10-

to those activities." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985). The Tenth Circuit applies a three-part test to determine specific jurisdiction:

> (1) the nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposely avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or results from the defendant's forum-related activities; and (3) the exercise of jurisdiction must be reasonable.

Packerware Corp. v. B & R Plastics, Inc., 15 F. Supp.2d 1074, 1078 (D. Kan. 1998). Solicitation by defendants is some evidence suggesting purposeful availment. Far West Capital, Inc. v. Towne, 46 F.3d 1071, 1076 (10th Cir. 1995). Here, defendants solicited business from Sprint, negotiated a contract from Texas with Sprint in Kansas and sent fraudulent communications into the state. The claim arises from defendants' actions. The Court finds that plaintiff has set forth a prima facie case for jurisdiction, and jurisdiction in Kansas does not offend fair play and substantial justice.

**II.    Venue**

Fed. R. Civ. P. 12(b)(3) governs motions for dismissal based on improper venue. "Venue refers to the place where a lawsuit should be brought." Clemons v. Speigel, No. 94-4092-SAC, 1994 WL 732630, at *1 (D. Kan. Dec. 27, 1994) (citing Executive Aircraft Consulting, Inc. v. Tower Fin. Corp., No. 91-1357-B, 1992 WL 402032, at *2 (D. Kan. Dec. 1, 1992)). Venue must be proper for each claim pleaded. Clemons, 1994 WL 732630, at *1 (citing Hansen-Moor Assocs., Inc. v. Allied B/J Trust, No. 91-4192-C, 1992 WL 190714, at *3 (D. Kan. July 17, 1992)). Once challenged, plaintiff must show that venue is proper in the forum state. Jet-Pro Co., Inc. v. Sweet Mfg. Co., Inc., No. 93-4059-SAC, 1993 WL 463512, at *8 (D. Kan. Oct. 27, 1993) (citing Hansen-Moor, 1992 WL 190714, at *3). Essentially, a court's discretion over procedures governing motions to dismiss for improper venue is the

same as when considering motions to dismiss for lack of personal jurisdiction. Id. (citing Hansen-Moor, 1992 WL 190714, at *4).

Defendants claim that venue is improper because all defendants are citizens of Texas. Defendants further assert that none of the events or alleged omissions giving rise to plaintiff's claims occurred in Kansas. Plaintiff argues that venue in the District of Kansas is proper under 28 U.S.C. § 1391(a)(1) and (a)(2) because the claims are based on misrepresentations made to Sprint in Kansas.

Under 28 U.S.C. § 1391(a)(1), in a civil action where subject matter jurisdiction is founded only on diversity of citizenship, the action can be brought in a judicial district where any defendant resides, if all defendants reside in the same state. Section 1391(c) states that "a corporate defendant shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced."

As noted, the Court has personal jurisdiction over defendants. Defendants are therefore deemed residents of Kansas. Since federal jurisdiction is solely based on diversity of citizenship, the case may be brought in any district where any defendant resides. As a result, venue in the District of Kansas is proper under 28 U.S.C. § 1391(a).

**IT IS THEREFORE ORDERED** that Defendant RWT Tours, Inc., William D. Howell, And Destination San Antonio, Inc.'s Motion To Dismiss (Doc. #22) filed March 4, 2005 be and hereby is **OVERRULED**.

**IT IS FURTHER ORDERED** that Defendants RWT Tours, Inc. And William D. Howell' [sic] Motion To Dismiss (Doc. #6) filed November 19, 2004 be and hereby is **OVERRULED as moot**.

Dated this 20th day of April, 2005 at Kansas City, Kansas.

                                                  s/ Kathryn H. Vratil
                                                  Kathryn H. Vratil
                                                  United States District Judge